IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELBERT ZEIGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09cv284-WHA |
| | ) | (WO) |
| ALABAMA DEPARTMENT OF HUMAN | ) | |
| RESOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. # 23) filed by

Defendants the Alabama Department of Human Resources ("ADHR"), Lester Thomas

("Thomas"), and Paul McLendon ("McClendon") (collectively "Defendants") on October 30,

2009.

Plaintiff Elbert Zeigler ("Zeigler") filed the Complaint in this case on April 3, 2009.  In

his Complaint, Zeigler brings claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, and 42 U.S.C. §

1983.  The Defendants have moved this court, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, to enter summary judgment in their favor as to all of Zeigler's claims against them.

Zeigler has filed a brief and evidence in response to that Motion (Doc. # 26), to which the Defendants' have replied with evidence (Doc. # 27).[1]

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

---

[1]  In response to Defendants' reply brief, Zeigler filed a Motion to Strike New Evidence and Argument in Defendants' Reply Brief.  (Doc. # 29.)  The court denied the motion, but granted the Plaintiff additional time to respond to any new evidence and argument in the Defendants' reply brief that the Plaintiff found to be objectionable.  (Doc. # 30.)  The Plaintiff then filed a sur-reply brief.  (Doc. # 31.)  In ruling on this motion for summary judgment, the court considers all of the evidence submitted by the Defendants as well as all the evidence submitted by the Plaintiff.  (Doc. # 23, 26, 27, 31.)

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  <u>FACTS</u>

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

Elbert Zeigler, a black male, began working for ADHR in January of 2006 as a laborer in the warehouse.  Within the first several months of his employment, Zeigler asked his supervisors, McClendon and Thomas, about opportunities for promotion to a more advanced position with ADHR.  McClendon and Thomas informed Zeigler that no opportunities for advancement existed in the ADHR warehouse, and he would have to transfer in order to advance in his employment.

In November of 2006, ADHR filled a vacancy in its warehouse with a white male, Joey Riley, in a classification and at a pay level that would have been a promotion for Zeigler.

Thomas and McClendon did not post any announcement of the vacancy or otherwise allow

Zeigler or any other interested person to know that it was available.  Thomas made the

decision to hire Riley and the ADHR commissioner approved that decision.  After his hire,

Riley informed Zeigler that he was earning more  money and was in a higher-level job

classification than he was, even though Zeigler trained Riley in his job at ADHR and

performed the same daily job duties.

   After learning this information from Riley, Zeigler complained to McClendon and

Thomas that he should have been given the opportunity to be promoted to the position Riley

filled, and that Zeigler believed he was being discriminated against because of his race.

Thomas and McClendon told Zeigler to take his problem to the Equal Employment

Opportunity Commission ("EEOC") or the ADHR's Office of Civil Rights / Equal

Employment ("CR/EE"), which is the department's internal equal employment office.  Thomas

added that he had "been through this before, and that's why the state keeps attorneys on stand-

by."  Zeigler notified the CR/EE office in August of 2007 that he believed he had been

discriminated against on account of his race because he was not given an opportunity to move

into the vacancy that Riley filled.  On February 6, 2008, the CR/EE office found that ADHR

discriminated against Zeigler on the basis of his race when it denied him promotional

opportunities, and directed that he should be promoted as soon as possible.

   Roughly two weeks later, on February 21, 2008, Zeigler, after completing his assigned

work, was watching a DVD at his desk in the warehouse when Thomas, along with two white

investigators assigned to assist with ADHR complaints, swiftly approached Zeigler's cubicle

and shouted "What are you doing?"  Startled by the comment, Zeigler responded that he was

watching a DVD on his break just like he had done many times before.  Zeigler claims that McClendon granted him permission to bring his own personal DVD player to the warehouse so that he could watch movies during his breaks.  After confronting Zeigler about the movie watching, Thomas directed Zeigler to come to his office immediately.  When Zeigler questioned why he was being confronted about watching a DVD on his break, one of the investigators stated that Zeigler had been under surveillance.

On the way to Thomas's office, Zeigler protested that he had done nothing wrong, he knew his rights, and he was being set up by Thomas as retribution for the CR/EE's finding in his favor.  Although the parties disagree about the precise details of the confrontation in Thomas's office, Zeigler agrees that everyone in the office was yelling at each other; he was upset; and he left the office without Thomas's permission, to call his attorney for advice about the situation. Zeigler later returned to the office, but Thomas dismissed him because he needed to talk to ADHR's personnel office.  Zeigler took leave for the remainder of the day with the approval of Thomas, and was on sick leave until returning to work on February 26, 2008. When he returned, Zeigler received a letter stating he had been terminated by the ADHR director for argumentative and disruptive behavior.

In addition to the failure to promote and the termination, Zeigler claims that the department retaliated against him for participating as a witness in a sexual harassment investigation.  In September of 2007, Zeigler allegedly witnessed Leann Addison ("Addison"), a white female co-worker, attempt to hug a black male co-worker and grab his genitals in the warehouse mail room.  Thomas interviewed Zeigler about the incident, and Zeigler made statements against Addison.  After the incident, Thomas removed the male victim from his

position in the mail room, and moved Zeigler to fill the vacancy and work in the mail room

with Addison.  Zeigler reported to Thomas that he felt uncomfortable working with Addison

because of his participation as an adverse witness in the sexual harassment investigation and the

derogatory statements Addison made towards Zeigler.  Thomas responded that he needed his

mail and, if Zeigler did not process the mail, he "would have a problem."  The CR/EE office

eventually found  that Addison sexually harassed the black male victim, and, as a result, the

victim was placed back in his position in the mail room, and Addison was terminated.  The

report notes that Thomas told an investigator that he asked the black male victim to "back

down on this" and not file a formal report.  The report also notes that Thomas treated the black

victim in a disparate manner, as evidenced by Thomas's statement that had the black male

sexually harassed Addison, a white female, then Thomas would have had the black male

handcuffed and sent to jail.

## IV. DISCUSSION

### A.  Title VII Claims

### 1.  Individual Capacity Claims

Zeigler has specifically stated that he has not sued Thomas and McLendon in their

individual capacity under Title VII.   Accordingly, to the extent that the Complaint may assert

individual capacity claims against Thomas and McClendon under Title VII, summary judgment

as to those claims is due to be GRANTED.

### 2.  Plaintiff's Receipt of Second Right-To-Sue Letter

Defendants initially argued, in both their opening brief as well as their reply brief, that

Zeigler failed to exhaust his administrative remedies concerning his Title VII wrongful

termination claim because he did not obtain a right-to-sue letter from the EEOC concerning his second EEOC charge. The Defendants, however, now concede that Zeigler does, in fact, have a right-to-sue letter concerning his second EEOC charge, and thus the Defendants have withdrawn their argument that Zeigler lacks a right-to-sue letter regarding his claims. (Doc. # 32.)

### 3.  Timeliness of Plaintiff's Charge of Discrimination with the EEOC

Defendants argue that Zeigler's failure-to-promote and hostile work environment claims under Title VII must be dismissed because they are untimely.

Under § 706 of Title VII, 42 U.S.C. § 2000e-5(e)(1), only those "unlawful employment practice[s]" that are complained of in a timely-filed charge of discrimination to the EEOC can form the basis for Title VII liability. *See, e.g.*, *City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002) ("If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful."). In a non-deferral state such as Alabama, the deadline for filing a charge is 180 days after the alleged discriminatory act. *See Ledbetter v. Goodyear Tire and Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005); 42 U.S.C. § 2000e-5(e)(1). The timeliness of a claim, moreover, depends on the type of claim at issue. In the context of a hostile environment claim, "allegations outside the statutory time period may permissibly be considered only if at least one act contributing to the hostile environment took place within the applicable statutory time frame." *Carter v. University of South Ala. Children's & Women's Hosp.* 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007) (citing *Ledbetter*, 421 F.3d at 1179); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002) ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the

statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.").  In contrast, the discriminatory decision not to promote an employee is a discrete act that triggers the 180-day period in which to file a charge of discrimination.  *Morgan*, 536 U.S. at 114.

Zeigler's hostile environment claim is not time barred.  Zeigler filed his first EEOC charge on February 21, 2008, and in that charge he complained of "unwelcome racial comments" and the discriminatory application of disciplinary rules, evaluations, and requests for leave. (Doc. # 23, Ex. A Part 3, Def.'s Ex. 14.)  In order for Zeigler's hostile environment claim to be timely, at least one act or omission contributing to the hostile environment must have occurred on or after August 25, 2007, the 180-day period preceding the EEOC charge.  The summary judgment record, taken in the light most favorable to Zeigler, reflects that at least one of the acts or omissions of which he complains took place after August 25, 2007.  In particular, in October of 2007, Addison, a co-worker of Zeigler's, made derogatory comments to Zeigler that went unaddressed by Thomas.  (Doc. # 26, Ex. # 19.)  Although Zeigler's hostile environment claim embraces alleged acts of discrimination preceding the August  2007 accrual date, including without limitation Joey Riley calling his supervisor the "HNIC," an acronym standing for "The Head Nigger In Charge"(August 24, 2007), Addison's use of the phrase "nigger music"(August 1, 2007), and McClendon's use of the phrase "fat black ass," "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  *Morgan*, 536 U.S. at 106. Accordingly, Defendant's motion for summary judgment on this basis is due to be DENIED.

8

Zeigler's failure-to-promote claim, however, is time barred.  Zeigler filed his first EEOC charge on February 21, 2008, and in that charge complained of being denied a promotion on account of his race.  (Doc. # 23, Ex. A Part 3, Def.'s Ex. 14.)  On November 16, 2006, Riley filled the laborer position that Zeigler claims he was wrongly denied.  (Doc. # 23, Ex. H.)  Thus, Zeigler waited more than 15 months after Riley filled the coveted position before he filed his EEOC charge, which is well outside the 180-day period.  In his sur-reply brief, Zeigler states that he did not have knowledge that he had been denied an opportunity for promotion until after Riley disclosed to him in August of 2007 that he earned more money and enjoyed a higher job classification.  Although Zeigler does not indicate in his brief what day in August he became aware of the alleged discrimination, the letter Zeigler submitted to the ADHR CR/EE office indicates that he knew on August 7, 2007 that Riley earned more money and enjoyed a higher job classification.  (Doc. # 26, Ex. 18.)  Thus, even if the 180-day limitations period started when Zeigler had knowledge of the discriminatory promotion (August 7, 2007) rather than when the coveted position was filled (November 16, 2006), the filing of the EEOC charge on February 21, 2008 is still untimely.[2]   Accordingly, the Defendants' motion for summary judgment as to Zeigler's Title VII failure-to-promote claim is due to be GRANTED.[3]

---

[2]  The court recognizes that, after being told by his supervisor to take his problem to the EEOC or the CR/EE, Zeigler notified the ADHR CR/EE office about the alleged discriminatory promotion on August 30, 2007, and that office issued its finding on February 6, 2008.  Because a plaintiff's attempts to pursue other avenues to resolve a dispute do not toll the requisite EEOC filing period, the period of time the department took to investigate the internal complaint counts when calculating the 180-day period.  *See Portera v. State of Ala. Dept. of Finance*, 322 F. Supp. 2d 1285, 1289 (M.D. Ala. 2004).

[3]  Although Zeigler's failure-to-promote claim under Title VII is barred for timeliness reasons, no such timing problem exists under § 1983.  *See Lufkin v. McCallum*, 956 F.2d 1104, 1106 & n.2 (11th Cir. 1992) (noting that proper statute of limitations for § 1983 claim is the

**4.  Termination Claim**

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).  The critical element in establishing wrongful race discrimination in violation of Title VII is discriminatory intent.  *See St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 506 (1993).  Such discriminatory intent can be established through (1) statistical proof of a pattern of discrimination, (2) direct evidence of discrimination, which consists of evidence that, if believed, would prove the existence of discrimination without inference or presumption, or (3) circumstantial evidence of discriminatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Zeigler asserts that his termination claim is supported by circumstantial evidence of discriminatory intent.

Under the *McDonnell Douglas* framework, the plaintiff must first raise an inference of race discrimination by establishing a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802;  *Batey v. Stone*, 24 F.3d 1330, 1333-34 (11th Cir. 1994).  After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action.  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision

---

forum state's general statute of limitations for personal injury cases and that Alabama's statute of limitations is two years).  Thus, Zeigler's failure-to-promote claim will be considered under § 1983.  *See infra* Section B.1.

"either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

A plaintiff's prima facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Defendants do not dispute elements 1 and 3, as Zeigler is a black man whose employment was terminated. Defendants, however, argue that Zeigler has failed to show that a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (internal quotation

11

marks and citations omitted).  "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed."  *Id.* (internal quotation marks and citations omitted).  The Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Id.* at 1368-69.

Zeigler identifies several individuals whom he believes engaged in misconduct similar to his without being terminated.  In particular, Zeigler points to three white employees in the warehouse[4] and two white employees in the mail room[5] who all have used office computers to surf the internet and watch movies during working hours without being terminated.  The court finds that the evidence of misconduct engaged in by these white comparators does not create a question of fact as to whether their conduct is "nearly identical" to the misconduct engaged in by Zeigler on the basis of both the quantity and the quality of the misconduct.  The summary judgment record, taken in the light most favorable to Zeigler, indicates that he, after being confronted by Thomas for watching movies during working hours, was upset and yelled at his supervisor.  (Doc. # 23; Ex. A Part 1, pp. 120:1-6, 123:15-18.)  Zeigler then left Thomas's office, on his own initiative and without permission, to call his attorney, and returned to the office a short while later.  (Doc. # 23, Ex. A Part 1, p. 121:1-22.)  Thus, a substantial reason for Zeigler's termination, as stated in the discharge letter, was the argumentative, disruptive, and

---

[4]  The employees in the warehouse that Zeigler proffers as similarly situated white comparators are Joey Riley, Steven Wambles, and Paul McLendon.  (Doc. # 26, p. 2-3, ¶ 5-6.)

[5]  The employees in the mail room that Zeigler proffers as similarly situated white comparators are Chris Andress and Josh Sumpter.  (Doc. # 26, p. 2-3, ¶ 5-6.)

insubordinate behavior he exhibited after his supervisors attempted to discuss his movie-watching during working hours, not simply the movie-watching itself.   (Doc. # 26, Ex. # 23.)   Zeigler provides no facts concerning an individual who has engaged in this type of conduct and been retained.  In addition, Zeigler did not simply engage in a single incident of misconduct.  On March 10, 2006, after being at ADHR for barely a month, Zeigler received a written reprimand for engaging in a physical altercation with another employee.  (Doc. # 26, Ex. # 27, p. 3.)   On February 26, 2007, Zeigler received another reprimand for engaging in "abusive or threatening language" towards a UPS driver who was delivering items to ADHR.  (Id.)   Zeigler has pointed to no comparator who has engaged in such argumentative and disruptive behavior related to DVD watching without being terminated, and he certainly has not identified an individual who had also engaged in other disruptive behavior on earlier occasions and did not get terminated.  Thus, Zeigler has failed to meet his burden of pointing to a white employee who engaged in the same or similar conduct, and the Defendants' motion for summary judgment on Zeigler's wrongful termination claim is due to be GRANTED.[6]

**6.  Retaliation Claim**

Defendants argue that Zeigler's retaliation claim under Title VII  should be dismissed because he cannot establish a prima facie case of retaliation.[7]

---

[6]  The court's granting of summary judgment as to Zeigler's wrongful termination claim under Title VII also applies to Zeigler's wrongful termination claim under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (noting that discrimination claims brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework).

[7]  The Defendants have not moved for summary judgment on Zeigler's retaliation claim based on any other ground, such as the Defendants' production of a race neutral reason for the

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).   To make a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)(internal quotation marks and citation omitted).  The United States Supreme Court has defined an adverse employment action in the context of a retaliation claim as an action by an employer that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  To establish a causal connection between participation in a protected activity and adverse employment action, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quotations omitted).  Moreover, for purposes of a prima facie case, close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated.   *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (citations omitted).  The Supreme Court has noted that in order to show a causal connection "mere temporal proximity between knowledge of protected activity and an adverse action must be 'very close.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (involving alleged retaliation under the ADA) (citing *Clark County*

---

alleged retaliatory acts and Zeigler's failure to show pretext.  Thus, the court only addresses whether Zeigler has adequately stated a prima facie case of retaliation.

*Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (alterations omitted)).  The Supreme Court has

cited with approval decisions in which a three to four month disparity was found to be

insufficient to show causal connection. *Id.*

      In this case, Zeigler has not clearly described the theory upon which he relies in stating

his retaliation claim.  In his opposition brief, Zeigler identifies two statutorily protected activities

in which he engaged and alleges ADHR took multiple adverse employment actions against him,

but he does not articulate how any of the adverse actions are connected to the statutorily

protected activities.  (Doc. # 26, p. 18-20.)  The court will thus analyze his retaliation claim by

separating the two statutorily protected activities and evaluating whether there is evidence that

these protected activities are causally related to any of the adverse employment actions.

      The first statutorily protected activity Zeigler identifies is his participation as a witness in

a sexual harassment investigation.  In September of 2007, Zeigler allegedly witnessed Leann

Addison, a white female co-worker, attempt to hug a black male co-worker and grab his genitals.

(Doc. # 23, Ex. A Part 1, pp. 198:15-200:20.)  Thomas later interviewed Zeigler about the

incident.  Although Addison was eventually terminated because of the incident, Zeigler claims

that the Defendants did not really want to fire Addison.  As evidence, Zeigler points to the

investigative report compiled by ADHR's CR/EE office.  In that report, Thomas told the

investigator that he asked the victim to "back down on this" and not file a formal report.  (Doc. #

26, Ex. 13, p. 3, ¶ 3.)  Thomas also allegedly told the investigator that he would have had the

black male employee led out in handcuffs if he had performed the same acts on the white

employee.  (Id. at ¶ 9.)

Zeigler then identifies the following events as adverse employment actions that potentially relate to his participation in the sexual harassment investigation: (1) his assignment to work in the mail room with Addison, the employee who was accused of, and eventually terminated for, sexual harassment; (2) the disparate application of work rules to Zeigler regarding the use of the DVD player during working hours; and (3) the termination of his employment.[8]  As for the disparate application of the DVD rules and the termination of his employment, Zeigler has failed to establish that these allegedly adverse actions were causally related to his participation in the sexual harassment investigation.  Zeigler participated as a witness in the sexual harassment investigation in September of 2007; he was called down for using the DVD player during working hours, and was subsequently terminated, in February of 2008.  Zeigler has submitted no evidence other than temporal proximity to support his retaliation claim based on these two adverse employment actions, and a five-month gap between the protected activity and the adverse employment decision is insufficient to establish a prima facie case.  *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that a "three and one-half month temporal proximity is insufficient to create a jury issue on causation.");  *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that "in the absence of any other evidence of causation," a three-month proximity "between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.").

---

[8]  In his deposition, Zeigler testified that his annual evaluation, which was given three weeks early, was the adverse employment action that resulted from his participation in the sexual harassment complaint.  (Doc. # 23, Ex. A Part 1, pp. 207:10-13, 209:22-210:3.)  Zeigler, however, does not point to this evidence, or argue it, in his reply brief or sur-reply brief.  Thus, the court does not consider that to be evidence supporting a retaliation theory.

The assignment of Zeigler to work in the mail room with Addison is another matter.  The summary judgment record indicates that Zeigler wrote memoranda to the ADHR CR/EE office in October of 2007 complaining about his assignment to the mail room, where he was forced to work with Addison, the employee against whom Zeigler made statements in the sexual harassment investigation.  (Doc. # 26, Ex. 19.)  Zeigler told Thomas that he felt uncomfortable working in the mail room with Addison, and that he would rather perform his prior duties in the warehouse.  (Id.)  Thomas told Zeigler that he had bigger problems to deal with than Zeigler's problems with Addison, and Zeigler was forced to remain in the mail room with Addison until Addison was terminated.  Thus, the facts, taken in the light most favorable to Zeigler, indicate that Zeigler engaged in a statutorily protected activity when he participated as a witness in the sexual harassment investigation in September 2007, and within weeks of that participation, Thomas assigned Zeigler to a less desirable position in the mail room.  These facts sufficiently establish a prima facie case of retaliation.[9]  Accordingly, Defendants' motion for summary judgment as to Zeigler's retaliation claims based on the sexual harassment incident is due to be DENIED.[10]

The second statutorily protected activity Zeigler identifies is the filing of an internal complaint with the ADHR CR/EE office on August 30, 2007 (Doc. # 26, Ex. 18), and the filing of the first EEOC charge on February 21, 2008 (Doc. # 26, Ex. 24).  Zeigler's internal complaint

---

[9]  Defendants have not challenged whether Zeigler's assignment to the mail room is an adverse employment action.

[10]  Defendants have not moved to dismiss Zeigler's retaliation claim based on the sexual harassment incident on the ground that they have met their burden of producing legitimate reasons for assigning Zeigler to the mail room and Zeigler has failed to establish pretext.

and the EEOC charge both allege primarily that ADHR's failure to promote him to the position

of Utility Laborer was racially discriminatory.  Zeigler then identifies the following adverse

employment actions related to the protected activity of filing the internal complaint and EEOC

charge:  (1) the termination of his employment on February 26, 2008; and (2) Defendants'

disparate application of work rules to Zeigler regarding the use of the DVD player on February

21, 2008.

       The court finds that Zeigler has established a prima facie case of retaliation based on the

termination of his employment and the alleged disparate application of work rules to Zeigler

regarding the DVD player.  Zeigler filed his EEOC charge on February 21, 2008, and his

employment was terminated only five days later.  Moreover, the internal equal employment

office issued its finding of discrimination on February 6, 2008, and approximately two weeks

later Zeigler was called down about the DVD and then terminated.  Thus, Zeigler has sufficiently

stated a prima facie case of retaliation based on the work rules application and termination of his

employment, and the Defendants' motion for summary judgment on these bases is due to be

DENIED.[11]

## 7.  Hostile Environment Claim

_____

[11]  The court's denial of summary judgment as to Zeigler's retaliation claims under Title
VII also applies to Zeigler's retaliation claim under 42 U.S.C. § 1981, as enforced by 42 U.S.C.
§ 1983.  *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (noting that
discrimination claims brought under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same
analytical framework).

Defendants argue that Zeigler's hostile environment claim must be dismissed because he has failed to show the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment.

To establish a hostile environment claim based on racial harassment, Zeigler is required to show that: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) the employer was responsible for such environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Hostile work environment claims involve both a subjective and objective component. "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of the employment, and this subjective perception must be objectively reasonable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)(internal quotation marks and citation omitted). In analyzing the objective component of these claims, the Supreme Court has held that courts should consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the plaintiff's job performance. *See id.* at 1246; *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th  Cir. 1997). The conduct must be examined in context, not as isolated acts, and the severity and pervasiveness of the conduct must be judged under the totality of the circumstances. *Allen*, 121 F.3d at 647. " '[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to

19

"amount to discriminatory changes in the 'terms and conditions of [a person's] employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (citation omitted).

Zeigler's hostile environment claim is based on the following events:  (1) Joey Riley, a warehouse employee, called his supervisor the "HNIC," an acronym standing for "The Head Nigger In Charge."  Riley  was given a warning for the incident which is the lowest level of discipline in the ADHR progressive discipline system (Doc. # 26, Ex. 10); (2)  LeAnn Addison, a warehouse employee, referred to the music she was listening to as "nigger music."  Thomas gave Addison an "Action Plan," which is not listed among the disciplinary actions in the Employee Handbook or Employee Performance Appraisal (Doc. # 26, Ex. 15, pp. 41:07-42:11); (3) Zeigler overheard McClendon say to an unknown female on the phone that he was "fed up with her fat black ass calling" (Doc. # 26, Ex. 3, p. 183:6-20); (4) Bobby Jones, a warehouse worker, has heard McClendon tell Zeigler after he requested advancement at ADHR that if Zeigler did not like his job then he could "get the fuck out."  McClendon has been repeatedly warned about his use of profanity, but he has not been disciplined despite reports made to Thomas (Doc. # 26, Ex. 5, ¶ 3); (5) A mug shot photograph of O.J. Simpson was posted for several weeks on the wall within ten feet of McLendon's office (Id. at ¶ 9); and (6) McClendon implemented different rules for black and white employees regarding the use of the warehouse computers (Doc. # 26, Ex. 3, pp. 176:1-17, 177:06-178:22).

Viewing the evidence in the light most favorable to Zeigler, the court finds that he has failed to produce sufficient evidence that would allow a rational trier of fact to conclude that the Defendants subjected him to a hostile working environment.   In particular, the Defendants' conduct was not sufficiently severe or pervasive to affect a term or condition of his employment

and create a hostile or abusive work environment.  Applying the requisite factors to the totality

of these events, the Defendants' alleged misconduct was infrequent, as Zeigler points to only six

incidents in the two years he was employed by ADHR.  The severity of the Defendants' conduct

is on the modest end.  While the comments made by Zeigler's co-employees are offensive and

unacceptable, Zeigler has not established that such comments were pervasive enough to alter the

conditions of his employment.  And, ADHR did not turn a deaf ear to the racial slurs but rather

took disciplinary action against both employees who used the slurs.  That Zeigler disagreed with

the amount of discipline ADHR imposed is insufficient to demonstrate an objectively hostile

working environment.  In addition, while it is true that  the court may consider racial slurs not

directed at the plaintiff or not made in the plaintiff's presence as evidence of a hostile

environment, *Busby v. City of Orlando*, 931 F.2d 764, 785 (11th Cir.1991), scattered slurs do not

constitute a hostile environment.  *See id.* at 785 ("an employer is not charged by law with

discharging all Archie Bunkers in its employ, [but only] when [the racial slurs] are so egregious,

numerous, and concentrated as to add up to a campaign of harassment the employer is culpable

for failing to discover what is going on and to take remedial steps.") (citations and quotation

marks omitted).[12] As far as the mug shot of O.J. Simpson, the meaning of this photograph cannot

---

[12]  Zeigler claims that a single instance of the use of the word "nigger" creates a triable issue of fact for a hostile environment claim.  This contention is incorrect.  The Eleventh Circuit has established that a court must consider the totality of the circumstances in determining whether the work environment was abusive, not simply the use of a particular racial epithet.  *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997).  Also, the two non-binding cases that Zeigler cites do not stand for the proposition that a single use of the word creates a triable issue of fact.  In  *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 & n.4 (7th Cir. 1993), the plaintiff alleged that his supervisor used the word twice in the plaintiff's presence and between five and ten times in the workplace generally.  In *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 154 (E.D.N.Y. 2002)*,* the plaintiff alleged seven incidents when various management employees used the term over a five month period, and two of the racial slurs were

be determined without context.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.") (citation omitted).  Zeigler fails to provide this context.  He gives the court no facts about the picture, other than its location, from which a reasonable fact finder might conclude that the presence of the picture is racially offensive.  Finally, Zeigler has not alleged that he suffered any physical threats or humiliation as a result of any of Defendants' conduct, or that any alleged harassment unreasonably interfered with his work performance.

In sum, the six sporadic incidents that occurred over a two-year period do not amount to a situation where "the workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Butler v. Ala. Dept. of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008).  The evidence Zeigler points to is simply not sufficient to create a question of fact as to whether there was harassment so severe or pervasive as to render the workplace objectively hostile or abusive.  Based on the foregoing, the court concludes Defendants' motion for summary judgment on Zeigler's hostile work environment claim is due to be GRANTED.[13]

**B.  Section 1981 and Section 1983 Claims**

---

directed to the plaintiff.

[13]  The court's granting of summary judgment as to Zeigler's hostile environment claim under Title VII also applies to Zeigler's hostile environment claim under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  *See Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009) (noting that discrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework).

**1. Promotion Claim**

Zeigler claims that Defendants violated the Equal Protection Clause of the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983, when ADHR failed to promote him to the position of Utility Laborer.

Although this same claim asserted under Title VII is time barred, no such timing problem exists under § 1983.  In Alabama, there is a two-year statute of limitations for claims brought under the Equal Protection Clause of the Fourteenth Amendment, as enforced through § 1983. *Lufkin v. McCallum*, 956 F.2d 1104, 1106 & n.2 (11th Cir. 1992) (noting that proper statute of limitations for § 1983 claim is the forum state's general statute of limitations for personal injury cases and that Alabama's statute of limitations is two years).  Zeigler's failure to promote claim occurred within two years of his complaint.

Zeigler's Title VII and Equal Protection claims, premised on the same facts, both require evidence of intentional discrimination on the basis of race. "When Section 1983 is used as a parallel remedy for violation of [Title VII], the elements of the two causes of action are the same." *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) (citing *Harden v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)).  Consequently, the framework traditionally applied to claims of intentional discrimination under Title VII (the *McDonnell Douglas-Burdine* framework set out above) also applies to Zeigler's § 1983 claim for violation of the Equal Protection Clause.

Zeigler alleges that ADHR did not promote him to Utility Laborer[14] because of his race in violation of the Equal Protection Clause of the Fourteenth Amendment.  Zeigler argues that both direct and circumstantial evidence support his promotion claim.   As for direct evidence, Zeigler cites a two-page recommendation letter written by a civil rights analyst in the ADHR CR/EE office, the department's internal equal employment office.  In that letter, the analyst concludes that ADHR discriminated against Zeigler on the basis of his race by not considering him for a promotion to the Utility Laborer position, and that he should be promoted as soon as possible. (Doc. # 26, Ex. # 21.)  This evidence is not "direct evidence" of discrimination.  "[D]irect evidence relates to *actions or statements of an employer* reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998) (quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990))(emphasis added).  The civil rights analyst who wrote the recommendation letter was not Zeigler's employer or a decisionmaker responsible for making promotional decisions.  (Doc. # 27, Ex. J, p. 46:5-20.) Besides Zeigler's conclusory assertion that ADHR approved the finding issued by the civil rights analyst, no evidence suggests that the letter represents ADHR's position on the matter.  To the contrary, the letter is a third-party's non-binding evaluation of McClendon and Thomas's

---

[14]  In addition to the Utility Laborer position, Zeigler testified in his deposition that the Stock Clerk I position was a promotional opportunity he was denied on the basis of race.  The Defendants moved for summary judgment on the ground that Zeigler was not qualified for the Stock Clerk I promotion because he did not possess a high school diploma or GED, and he failed the required written exam for the position.  In his response brief and sur-reply brief,  Zeigler does not mention the Stock Clerk I position.  Because Zeigler has not met his burden in responding to Defendants' properly supported motion on this claim, summary judgment is due to be GRANTED as to any claim involving the Stock Clerk I position. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

conduct and does not directly reflect a discriminatory attitude held by McClendon, Thomas, or

ADHR.  As a result, this circumstantial evidence case proceeds under the burden-shifting

framework of *McDonnell Douglas* and its progeny.

A plaintiff may establish a prima facie case of discrimination with respect to promotions

by showing that: (1) he is a member of a protected class; (2) he is qualified for and applied for

the position; (3) he was rejected despite her qualifications; and (4) the position was filled with an

individual outside the protected class.  *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509

F.3d 1344, 1348 n.2 (11th Cir.2007).  However, where an employer does not formally announce

a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff

need not show under the second prong that he applied for the position – only that the employer

had some reason to consider him for the post. *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d

527, 533 (11th Cir.1992).   The first, third, and fourth elements are not disputed in this case, as

Zeigler is a black man who was passed over for the Utility Laborer position, while Joseph Riley,

a white applicant, was selected.

The Defendants argue, however, that Zeigler cannot meet the second element of the

prima facie case because he cannot show he was qualified for the Utility Laborer promotion.[15]  In

---

[15]  McClendon and Thomas also dispute whether Zeigler actually sought a promotion
before Joey Riley was hired.  Nonetheless, Zeigler has submitted evidence showing that he made
inquiries to Thomas and McClendon several months after he started working at ADHR.  Because
the court takes the facts in the light most favorable to Zeigler on this summary judgment motion,
and the law of this Circuit only requires a plaintiff to establish that the employer had a reason to
consider the employee for the promotion, Defendants are not entitled to summary judgment on
the ground that Zeigler did not apply for the promotion.  *See Jones*, 977 F.2d at 533 (11th Cir.
1992) ("[A] plaintiff makes out a prima facie case – that is, he creates a presumption of
discrimination and forces the employer to articulate legitimate reasons for his rejection – as long
as he establishes that the company had some reason or duty to consider him for the post. The
employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the

particular, Defendants contend that the following facts make Zeigler unqualified for the Utility Laborer promotion: (1) Zeigler was reprimanded for fighting shortly after he started working at ADHR; (2) the official job announcement from the State of Alabama Personnel Department requires an applicant to have one year's experience in the area of "semi-skilled work in building or mechanical trade," or "semi-skilled work operating equipment such as tractors or forklifts," and Zeigler possessed neither area of experience; (3) Zeigler failed to report on his job application two prior felony convictions, at least three past job terminations, and that he has not received a high school diploma or GED.

The court finds that Zeigler was qualified for the Utility Laborer position, and thus has stated a prima facie case of discrimination for his failure-to-promote claim. Nothing in the record indicates that the reprimand for fighting was a disqualifying offense for the Utility Laborer position. As for Zeigler's forklift credentials, he operated a forklift in his previous job for an eleventh-month period, operated a forklift during his time at ADHR, and trained Riley how to operate the forklift when he started working at ADHR. These facts establish that Zeigler met the requirement that he have at least one year of experience operating a forklift. As for the undisclosed felony convictions, job terminations, and educational credentials, Defendants did not know about these false statements at the time of the Riley promotion but discovered them during Zeigler's deposition. This evidence, acquired after the promotional decision, cannot be used as the basis for Defendants' employment decision. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 354-63 (1995); *Wallace v. Dunn Const. Co., Inc.*, 62 F.3d 374, 379 (11th Cir. 1995) (en banc).

───────────────

plaintiff was uninterested in the job.").

Having determined that Zeigler met his initial burden of establishing a prima facie case of race discrimination, the burden of production shifts to Defendants to articulate legitimate, non-discriminatory reasons for the decision not to select Zeigler for the Utility Laborer position. *See Burdine*, 450 U.S. at 254; *McDonnell Douglas*, 411 U.S. at 802.  This burden is "exceedingly light" and the employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (quotation omitted).  Defendants have met this burden by proffering the following non-discriminatory reasons for not promoting Zeigler:  (1)  Zeigler had recently been disciplined for fighting with another employee, an offense for which Zeigler expected to be terminated.  (Doc. # 23, Ex. A Part 1, p. 73:1-18, 77:18-23); (2) Joey Riley, the white employee who was selected for the Utility Laborer position, had superior qualifications compared to Zeigler.  In particular, Riley had already worked nearly a year as a Utility Laborer in the Alabama Department of Finance, and he held a job doing maintenance work, which is required for the Utility Laborer position, for over five and one-half years.  Zeigler had no experience at all as a Utility Laborer and barely qualified for the promotion.

Accordingly, the burden shifts back to Zeigler to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  To demonstrate pretext, a plaintiff must show that the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d

1276, 1289 (11th Cir.2005) (citing *Burdine*, 450 U.S. at 256)(quotation marks omitted).

Furthermore, the plaintiff must "produce sufficient evidence for a reasonable factfinder to

conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual."

*Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) ( en banc ) (emphasis added).

Zeigler has failed to satisfy his burden of proving pretext.  While Zeigler claims that his

false statements on his employment application are pretextual, he does not address the fact that he

was reprimanded for fighting at work or that Joey Riley had superior qualifications. Accordingly,

because the Defendants' have produced a legitimate, nondiscriminatory reason for not granting

Zeigler the promotion, and Zeigler has not satisfied his burden of proving pretext, the Defendants'

Motion for Summary Judgment is due to be GRANTED as to Zeigler's failure-to-promote claim.


**2.  Eleventh Amendment Immunity**

ADHR argues that the Eleventh Amendment bars the § 1981 and § 1983 claims against

it. The court agrees that ADHR is entitled to Eleventh Amendment immunity for these claims

because the State of Alabama has not waived its Eleventh Amendment immunity for § 1981 and

§ 1983 claims, and Congress has not abrogated the immunity with regard  to suits for monetary

damages by private individuals pursuant to § 1981 and § 1983.  *See Rizo v. Ala. Dept. of Human*

*Resources*, 228 Fed. App'x 832, 834-35 (11th Cir. 2007) (affirming dismissal of Alabama

Department of Human Resources on grounds of Eleventh Amendment immunity);  *Zatler v.*

*Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (citing *Quern v. Jordan*, 440 U.S. 332, 340-45

(1979)) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment

immunity in section 1983 damage suits.");  *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069

(5th Cir. Unit A 1981) (holding that section 1981 contains no congressional abrogation of the

state's Eleventh Amendment immunity and thus Eleventh Amendment barred section 1981 claim

against the state).[16]  Accordingly, the Defendants motion for summary judgment as to Zeigler's §

1981 and § 1983 claims against ADHR is due to be GRANTED.[17]

**3.  Qualified Immunity**

Defendants Thomas and McLendon argue that they are entitled to qualified immunity

regarding Zeigler's § 1983 individual capacity claims.

The court has determined that the only claims that can withstand Defendants' summary

judgment motion are the retaliation claims based on Zeigler's participation in the sexual

harassment incident and Zeigler's filing of the first EEOC charge.  Because the court has

determined that Zeigler has failed to produce sufficient evidence to withstand summary

judgment for his failure-to-promote, wrongful termination and hostile environment claims, the

court does not need to address the applicability of qualified immunity for these claims.  *See*

*Campbell v. Sikes*, 169 F.3d 1353, 1361-62 (11th Cir. 1999) (holding that in the absence of a

federal violation there is no need for a district court to address qualified immunity arguments in a

---

[16]  *Sessions* is binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981) (en banc).

[17]  Zeigler also states the same claims against ADHR as parallel causes of action under Title VII.  Unlike § 1981 and § 1983, Congress has abrogated Eleventh Amendment immunity for Title VII claims.  *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-48 (1976) ("In the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of 'race, color, religion, sex, or national origin.'").  Accordingly, the Eleventh Amendment does not bar the Title VII claims against ADHR.

29

summary judgment motion).  Thus, the court will address whether Thomas and McClendon are entitled to qualified immunity for the two retaliation claims.

Before the court addresses the merits of the qualified immunity defense, the court must address the fact that Zeigler has stated his retaliation claims under Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983.  The Eleventh Circuit has made clear that there is no cognizable claim for retaliation under the Fourteenth Amendment.  *See Ratliff v. Dekalb County, Ga.*, 62 F.3d 338, 340-41 (11th Cir. 1995) (holding that no established right exists under the Equal Protection Clause to be free from retaliation).  Also, the Defendants are correct in their contention that McClendon and Thomas are state actors and § 1981 does not provide a cause of action against state actors.  *See Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) (holding "that § 1981 does not provide an implicit cause of action against state actors;  therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under 1981.").  In light of these principles, the court considers the individual capacity retaliation claim to be asserted under 42 U.S.C. § 1981, as enforced by 42 U.S.C. § 1983.  *See Rioux v. City of Atlanta*, 520 F.3d 1269, 1273 & n.3 (11th Cir. 2008) (describing district court's "merging" of claim stated under § 1981 against state actors into § 1983 claim); *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) (noting that § 1981 claims against state actors must be brought pursuant to § 1983).

The doctrine of qualified immunity insulates government agents from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir.

30

1990).  "The purpose of this immunity is to allow government officials to carry out their

discretionary duties without the fear of personal liability or harassing litigation, protecting from

suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v.*

*Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  The basic premise of the doctrine is for

immunity to harbor government officials from liability unless their conduct violated  "clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow*, 457 U.S. at 818.

       Defendants argue that they are entitled to qualified immunity because Zeigler's evidence,

at best, shows that Defendants were motivated, at least in part, by lawful considerations.  In

support, they rely primarily on *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996) and cite the

following passage in support of their argument that qualified immunity is appropriate:

> [W]hen an adequate lawful motive is present, that a discriminatory
> motive might also exist does not sweep qualified immunity from the
> field even at the summary judgment stage. Unless it, as a legal matter,
> is plain under the specific facts and circumstances of the case that the
> defendant's conduct-despite his having adequate lawful reasons to
> support the act-was the result of his unlawful motive, the defendant
> is entitled to immunity. Where the facts assumed for summary
> judgment purposes in a case involving qualified immunity show
> mixed motives (lawful and unlawful motivations) and pre-existing
> law does not dictate that the merits of the case must be decided in
> plaintiff's favor, the defendant is entitled to immunity.

*Id.* at 1534-35.  The Eleventh Circuit has further explained that "[a] defendant is entitled to

qualified immunity under the *Foy* rationale only where, among other things, the record

indisputably establishes that the defendant in fact was motivated, at least in part, by lawful

considerations.*"  Stanley v. City of Dalton*, 219 F.3d 1280, 1296 (11th Cir. 2000) (citations

omitted); *see also Johnson v. City of Fort Lauderdale*, 126 F.3d at 1379 (noting that *Foy* "rested

primarily on the existence of an indisputable and adequate lawful motive"). Viewing the record in the light most favorable to Zeigler, the court cannot say that the record indisputably establishes that objectively valid reasons motivated the decision to assign Zeigler to the mail room with Addison. In fact, McClendon and Thomas have submitted no evidence as to why Zeigler was assigned to the mail room following his participation in the sexual harassment investigation. Also, McClendon and Thomas have not submitted evidence to counter Zeigler's contention that his termination was related to the ADHR CR/EE office finding that he was discriminated against. Defendants have successfully argued that Zeigler has failed to show his termination was discriminatory because he failed to submit proper comparator evidence, but they have not responded to Zeigler's contention that the termination was retaliatory. Moreover, it is not sufficient for McClendon and Thomas to establish that there exists a lawful basis for a reasonable ADHR supervisor to have terminated Zeigler or assigned him to the mail room. Rather, in order for the *Foy* analysis to apply, McClendon and Thomas must have been actually motivated, at least in part, by that lawful basis. *See Stanley*, 219 F.3d at 1297 n.29. The record does not indicate indisputable evidence of an actual lawful motive held by Thomas and McClendon. In light of the foregoing, a jury question exists and McClendon and Thomas's motion for summary judgment on the basis that they are entitled to qualified immunity is due to be DENIED.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Defendants' Motion for Summary Judgment (Doc. # 23) is GRANTED and judgment is entered against the Plaintiff and in favor of all Defendants as to Plaintiff's failure-

to-promote claim, wrongful termination claim, and hostile environment claim, all of which are stated as parallel causes of action under Title VII,  42 U.S.C. § 1981, and 42 U.S.C. § 1983.

2.  The Defendants' Motion for Summary Judgment (Doc. # 23) is DENIED as to Plaintiff's retaliation claim under Title VII based on his participation in the sexual harassment investigation as well as Plaintiff's retaliation claim based on the filing of his first EEOC charge.  This claim will proceed under Title VII against ADHR and under 42 U.S.C. § 1981, as enforced through 42 U.S.C. § 1983, against Thomas and McClendon in their individual capacities.

3.  The Defendants' Motion for Summary Judgment (Doc. # 23) is GRANTED to the extent Zeigler states individual capacity claims against McClendon and Thomas under Title VII.

This case will proceed to trial on the Title VII retaliation claims against ADHR, and the retaliation claims under 42 U.S.C. § 1981, as enforced through 42 U.S.C. § 1983, against Thomas and McClendon in their individual capacities.

Done this 29th day of April, 2010

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE